UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD B. WOODS,

       Plaintiff,

v.                                                                                 Case number 06-13499
                                                                               Honorable Julian Abele Cook, Jr.

NATIONAL RAILROAD PASSENGER CORP., d/b/a
Amtrak,

       Defendant.

## ORDER

On August 3, 2006, the Plaintiff, Edward Woods ("Woods"), filed a Complaint with this Court, in which he accused the Defendant, the National Railroad Passenger Corp ("Amtrak") of causing him to sustain significant bodily injuries when it, through its representatives, negligently instructed him to leave a moving train.

On April 27, 2007, Amtrak filed a motion, seeking the entry of a summary judgment under Fed.R.Civ.P. 56. For the reasons that have been set forth below, Amtrak's request for dispositive relief must be denied.

I.

On November 21, 2005, Woods brought his mother to the Baltimore-Woodward Amtrak railroad station in Detroit, Michigan. Pointing to the elderly age of his mother,[1] and not finding any available porter service at the station, Woods contends that he received permission from an

---

[1] Woods maintains that his mother has several disabilities in November 2005. However, the train ticket that was purchased at the Amtrak railroad station was for a senior citizen - not a handicap ticket.

Amtrak representative to temporarily board the train in order to lend assistance to his mother with her baggage. Amtrak denies Wood's version of the event, contending that it maintained a policy which denies access to its trains by non-ticketed passengers. Moreover, Amtrak asserts that if a non-ticketed passenger does enter the train, the conductor is obliged to stop the train and attempt to have the individual removed. Amtrak also submits that if the train has left the platform, its procedures mandate that the non-ticketed passenger be removed at the next scheduled stop.

In this case, Woods says that he and his mother waited for an hour due to the tardiness of the arriving train. Woods also claims that he did not (1) see any signs which preclude non-ticketed passengers from boarding a train, or (2) hear any announcements over the public address system which conveyed a similar message. According to Woods and while attempting to place his mother's luggage in her seat, he heard an "all clear" announcement from the conductor and, thereafter, felt the initial movement of the train. Woods submits that he was approached by a conductor who emphatically instructed him to immediately exit the now-moving train.[2] He contends that the conductor's forceful tone prompted him to immediately disembark from the train which resulted in a jump of approximately four feet onto the concrete platform. Woods maintains that this jump caused him to incur an instant numbness as well as an injury to the vertebrae in his neck.

Thereafter, Woods sought and received treatment on November 22, 2005 from a medical group of physicians in Detroit, Michigan for back pain. Although he claims to have informed his physician of the incident at Amtrak, Woods has not been able to produce any notes or medical charts which support this claim. Woods was also treated at the emergency room of the St. John

---

[2]None of the employees, who were working at the Amtrak on the date of the incident, have any recollection of the events about which Woods has complained. Moreover, these Amtrak employees have collectively denied having instructed him or any other non-ticketed passenger to exit a moving train.

Providence Hospital in Detroit for back pain and leg and arm numbness. Once again, Woods has been unable to produce any documentation that he informed his physician of the Amtrak incident.

II.

The Supreme Court has opined that "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). At the same time, the language within Fed.R.Civ. P.56© indicates that a motion for summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Here, the burden is upon Amtrak to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court must examine any documents (i.e., pleadings, depositions, answers to interrogatories, admissions, and affidavits) in a light that is most favorable to the Plaintiff. Fed. R. Civ. P. 56©; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). It is not the role of the Court to weigh the facts. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). Rather, it is the duty of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, a moving party can show that a genuine factual issue is lacking if the quality of the evidence is sufficient to make the issue "so one-sided that [he] must prevail as a matter of law," *id.* at 252, or point to a failure by the non-moving party to present evidence that is "sufficient to establish the existence of an element essential to its case,

and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Upon such a showing, the Plaintiff - as the non-moving party - must act affirmatively to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e). A mere scintilla of supporting evidence is insufficient. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Indeed, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

### III.

In order to prevail on a claim of negligence, a plaintiff must demonstrate that (1) the defendant owed him a legal duty, (2) the defendant breached or violated this legal duty, (3) the plaintiff sustained damages as a result of the breach, and (4) the breach was a proximate cause of his damages. *Schultz v. Consumers Power Co.,* 443 Mich. 445, 449 (1993). When seeking to determine if a duty exists, a court must consider such factors as the relationship between the parties, as well as the foreseeability and nature of the risk. *Schultz,* at 450.

The law imposes a duty "to conform to a particular standard of conduct to protect others against an unreasonable risk of harm." *Riddle v. McLouth Steel Products* Corp., 440 Mich. 85, 96 (1992); Burnett *v. Bruner*, 247 Mich. App. 365, 368 (2001). "In a negligence case, the theory of liability determines the nature of the duty owed and whether the open and obvious danger doctrine is applicable." *Laier v. Kitchen*, 266 Mich. App. 482, 493 (2005). The "open and obvious danger doctrine" is typically applicable in premises liability cases. *Id.* at 487. According to this doctrine, there is no duty to warn an individual of a danger that is obvious and can be easily discoverable. *Id.* Furthermore, the "open and obvious doctrine" does not "preclude a separate claim grounded on an independent theory of liability based on the defendant's conduct." *Id.* at 493. However, "the open and obvious danger defense is inapplicable" to a claim of ordinary negligence. *Id.*

It is Amtrak's position in this case that Woods' claim pertains to a premises liability issue. Thus, Amtrak proclaims that it has no duty to protect an individual, such as Woods, from open and obvious hazards. Amtrak points to Woods' admission that it is inherently and obviously dangerous to jump from a moving train. Furthermore, although Amtrak disputes the event in question and even assuming that the incident did occur for the purpose of this motion, it argues that Woods' complaint does not allege an injury which was directly caused by the instruction of an employee (i.e., train conductor) to exit a moving train. Amtrak also submits that Woods does not claim that any malfunction of the train or its negligent operation caused him to be injured. Rather, Amtrak asserts that Woods' allegation in this case is premised upon the injuries that were sustained by him as he exited the train on his own accord. Amtrak also argues that Woods, notwithstanding the conductor's alleged instruction, did not think about his actions prior to leaving the train. As a consequence, Amtrak argues that disembarking from a moving train falls within the "open and obvious doctrine" which frees it from any liability to Woods for his injuries. However, Woods disagrees, submitting that his claim is one of ordinary negligence which renders the "open and obvious doctrine" inapplicable to this case.

Woods has raised a genuine issue of a material fact regarding the occurrence of the incident which gives rise to this suit. It is clear that there are discrepancies between the parties' versions of the events, noting that none of the Amtrak employees have any recollection of the incident. This is an issue that must be evaluated by the finder of fact.

Nonetheless, Amtrak had a duty to reasonably conduct itself in a manner that would not endanger Woods or any of the other passengers on its train. Although an actual injury appears to have resulted from the force that was generated by Woods' exit from a moving train, it was Amtrak's allegedly negligent conduct - when accepting his version as being correct for the singular

purpose of this motion - which caused him to endanger himself and leap to the platform. Considering the allegations in this suit around the conduct of the Amtrak employees, and not the condition of Amtrak property, this lawsuit involves an ordinary negligence claim. Contrary to Amtrak's stated defense, the "open and obvious doctrine" does not apply under these circumstances. However, given that there are genuine issues of a material fact surrounding the alleged incident, the entry of a summary judgment would be an inappropriate action at this time.

IV.

Amtrak asks the Court to disallow any claim by Woods for non-economic damages, contending that he contributed to his own injuries. Furthermore, Amtrak argues that its own liability is comparatively less than that of Woods. In support of this argument, Amtrak refers to an acknowledgment by Woods that, when considering the incident retrospectively, he may not have exited the train in the same manner. Consequently, Amtrak submits that Woods is not entitled to any non-economic relief given that his unreasonable conduct resulted in his own injuries.

A Michigan Court of Appeals once declared that "[a]n adult plaintiff has a duty to exercise reasonable care for his own safety and protection." *Laier*, 266 Mich. App. at 498 (citation omitted). In a suit for negligence, a court should reduce a damage award by the total percentage of the plaintiff's degree of fault. Mich. Comp. Laws § 600.2959.[3] A determination of contributory

---

[3] Mich. Comp. Laws § 600.2959 reads as follows:

In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the court shall reduce the damages by the percentage of comparative fault of the person upon whose injury or death the damages are based as provided in section 6306. If that person's percentage of fault is greater than the aggregate fault of the other person or persons, whether or not parties to the action, the court shall reduce economic damages by the percentage of comparative fault of the person upon whose injury or death the damages are based as provided in section 6306, and noneconomic damages shall not be awarded

negligence "is one for the jury unless all reasonable minds could not differ . . . ." *Laier*, 266 Mich. App. at 210; *See also Poch v. Anderson*, 229 Mich. App. 40, 51 (1998). Woods takes the position that the issues of comparative fault and contributory negligence are questions of fact which are inappropriate considerations for an argument relating to a summary judgment. *Laier*, 266 Mich. App. at 210. The Court agrees.

While Woods may bear some responsibility for not questioning the conductor's alleged command to disembark, there is a genuine issue of a material fact as to whether the incident ever occurred. Even when accepting the facts in a light that is most favorable to Woods, the degree of contributory negligence is also a genuine issue of material fact. Thus at this juncture, it is inappropriate - as suggested by Woods - for the Court to opine whether his conduct was more negligent than the claimed actions by Amtrak. Such determinations are properly reserved for the fact finder. Accordingly, Amtrak's request for the entry of a summary judgment will be rejected.

IV.

For the reasons that have been stated, Amtrak's motion for summary judgment must be, and is, denied.

IT IS SO ORDERED.

Dated: August 6, 2007　　　　　　　　　　　　s/ Julian Abele Cook, Jr.
　　　Detroit, Michigan　　　　　　　　　　　　JULIAN ABELE COOK, JR.
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

Certificate of Service

I hereby certify that on August 6, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

　　　　　　　　　　　　　　　　　　　　　　　s/ Kay Alford
　　　　　　　　　　　　　　　　　　　　　　　Courtroom Deputy Clerk